UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                              :
GREGORY WILSON,                               :
                         Plaintiff,       :
                                             :                 11 Civ. 9157 (PAE)
              -v-                                  :
                                             :                 <u>OPINION & ORDER</u>
NEW YORK CITY DEPARTMENT OF CORRECTIONS,:
et al.,                                                 :
                         Defendants.    :
                                                 :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

Plaintiff Gregory Wilson moves this Court to "amend or alter [its] judgment [pursuant to] Rule 59" of the Federal Rules of Civil Procedure. Dkt. 31. Because Wilson appears to be contesting the Court's grant of the Defendants' motion to dismiss Wilson's Second Amended Complaint, Dkt. 29, the Court construes this as a motion under Rule 60(a) for "[r]elief from a judgment or order." *See* Fed. R. Civ. P. 60(a). For the reasons that follow, Wilson's motion is denied.

## I. Background and Procedural History

On December 14, 2011, Wilson brought suit against the New York City Department of Corrections ("DOC") and Lewis Schlosser (collectively, "Defendants"), alleging that Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, by failing to hire him for a position at the Department of Corrections. Dkt. 2. On November 29, 2012, Defendants moved to dismiss Wilson's Second Amended Complaint ("SAC"), Dkt. 21, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief could be granted. Dkt. 23. On March 8, 2013, the Court granted that motion. Dkt. 29.

In response to the Court's March 8, 2013 Opinion & Order ("Opinion"), Wilson submitted the instant motion. In support, Wilson makes six arguments, each consisting of no more than a sentence or two, as to why the Court's conclusions were wrong. *See* Dkt. 31, at 3 ("Wilson Amend Br."). The Court addresses Wilson's points in turn.

**II.    Discussion**

    **A.    Wilson's Point One:  "SSI Equals Disability"**

Wilson's first point appears to be that, in referring to "SSI" in his submissions to the Court, he meant that he was receiving "disability." Wilson Amend Br. The Court appreciates Wilson's clarification. That definition, however, is fairly included in the Court's characterization of SSI, and therefore the clarification compels no change in the Court's Opinion. *See* Opinion 4 n.3 ("Presumably, by SSI, Wilson is referring to Supplemental Security Income, which he states is his 'main income that I have to pay rent[,] eat[,] and make sure my son eat[s].' The Supplemental Security Income Program is a program run by the United States Social Security Administration that pays benefits to adults and children with disabilities who have limited income and resources."). Similarly, the Opinion states:

> Wilson's allegations as to his receipt of Supplemental Security Income [. . .] suggest that, conceivably, he intended to sue under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112–12117. Wilson, however, identifies no such disability, let alone that Dr. Schlosser or the DOC were aware of such a disability or that they chose not to hire Wilson on that basis. Wilson's allegations, therefore, would fail to make out a case under the ADA, which requires a showing that: (1) a plaintiff's employer is subject to the ADA; (2) the plaintiff suffers a disability within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job; and (4) he suffered some adverse employment action because of his disability. *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program*, 198 F.3d 68, 72 (2d Cir. 1999).

Opinion 6 n.4. That analysis still stands: Although Wilson has alleged that he receives Supplemental Security Income, he still has not identified a particular disability from

which he suffers.  Nor has he alleged that that disability falls within the meaning of the ADA (or that the definition of "disability" under the ADA and the requirements for receiving Supplemental Security Income are coterminous).  Wilson's allegations thus fall short of making out an ADA claim, even with the added clarification supplied in his most recent submission.

### B. Wilson's Point Two:  "Alleging Relevant Experience Not Necessary for Job with DOC"

In order to obtain a job with the DOC, Wilson argues, the "[o]nly require[ment]s are[:] 1) pass[ing] exam[;] 2) pass[ing] medical exam[; and] 3) passing psychological exam."  Wilson Amend Br.  Therefore, Wilson claims, he need not allege relevant experience.  Presumably, Wilson takes issue here with the Court's statement that he "has not pled any facts that could lead a factfinder to conclude that he was qualified [and] has not alleged that he had any relevant experience or credentials for work at the Department of Corrections."  Opinion 6.

Wilson may be correct that he need not allege relevant experience *in applying for a job* with the DOC.  That does not mean, however, that he need not allege relevant experience *in making out a Title VII claim* for failure to hire, the second prong of which requires that the individual bringing suit allege that he is qualified for the position he seeks.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010); *Ghosh v. N.Y.C. Dep't of Health*, 413 F. Supp. 2d 322, 332 (S.D.N.Y. 2006).  Without such information at the motion-to-dismiss phase, it is impossible for a court to assess whether, in fact, a viable Title VII claim for failure to hire exists.  Put differently, an employer's alleged failure to hire a candidate cannot be found discriminatory unless that candidate explains why, in fact, he was qualified for the job.

Wilson's statements regarding the eligibility requirements for a job with the DOC, therefore, in no way affect the Court's assessment of his discriminatory failure-to-hire claim.

**C.     Wilson's Points Three, Four, and Five:  "Seeking Correction Officer Position Can Be Easily Corrected Nor Is It A Fatal Defect"; "Can Be Construed that Wilson Applied for the Position & Did Not Receive It"; and "Can Also Be Construed From Submission that Wilson Applied for Job and Did Not Receive It"**

It is difficult to discern the meaning of Wilson's statement that "seeking correction Officer position can be easily corrected nor is it a fatal defect." The Court construes it, however, as closely related to Wilson's next two points, which appear to challenge the Court's ruling as to the third prong of a Title VII failure-to-hire claim.

The third prong of such a claim in this context requires that the plaintiff have applied for a position and that he did not receive it. *See* Opinion 6 (citing *Gaffney v. Dep't of Info. Tech. & Telecomms.*, 536 F. Supp. 2d 445, 459–60 (S.D.N.Y. 2008) (collecting cases)). The third, fourth, and fifth points of Wilson's submission appear to be confirming, in response to the Court's statement that "[m]issing from [Wilson's] submissions is any factual claim that he was in fact denied the position for which he, evidently, applied," Opinion 6, that he in fact was denied the Corrections Officer position.

Those statements, too, do not merit altering the Court's decision to dismiss this case. The adverse employment action requirement is a necessary element of a Title VII claim, but it alone is not sufficient to make out such a claim. To make out a *prima facie* Title VII claim, as the Court has noted, a plaintiff must meet all four prongs of the *McDonnell Douglas* test. And in the context of a motion to dismiss, a court must "consider these elements in determining whether there is sufficient factual matter in the complaint." *See* Opinion 7 (citing *Murphy v. Suffolk Cnty. Cmty. Coll.*, No. 10 Civ. 0251 (LDW)(AKT), 2011 WL 5976082, at *5 (E.D.N.Y. Nov. 29, 2011)); *see also Sommersett v. City of N.Y.*, No. 09 Civ. 5916 (LTS)(KNF), 2011 WL 2565301,

4

at *5 (S.D.N.Y. June 28, 2011) (elements of a *prima facie* case "provide an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible"). Even if the Court were to deem the third prong met here, giving Wilson the benefit of the doubt, the complaint would still fall far short of making out a plausible claim of employment discrimination; it would therefore still be insufficient to withstand a motion to dismiss.

### D.   Wilson's Point Six: "Motion to Amend Should Have Been Granted"

Wilson argues that his motion to amend should have been granted. The Court's decision, he states, "was based on Wilson's 3 attempts to amend." Wilson Amend Br. Wilson points out that he "is a pro se plaintiff w/o experience,"[1] and that there is "no limit to # of amendments." *Id.*

Wilson's motion to amend was denied, however, not because he had previously amended his complaint on three different occasions. Instead, the Court pointed out that, of the three opportunities given to Wilson to amend his complaint, "[n]one resulted in a complaint that was materially different, or came close to stating a claim. And Wilson's proposed amendment, in adding two new state-law claims but no additional facts, would not survive a motion to dismiss, and thus would be futile." Opinion 9. The proposed amended complaint submitted by Wilson, like the amended complaints before it and for the same reasons, was insufficient to withstand a motion to dismiss. Therefore, leave to amend was denied not solely on the ground of "repeated failure to cure deficiencies by amendments previously allowed," but also by reason of "futility of amendment." *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *McCarthy v. Dun & Bradstreet*

---

[1] Wilson is correct that, as the Court's Opinion notes, the Court is "obligated to construe *pro se* complaint[s] liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), interpreting them to "raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.2d 471, 474 (2d Cir. 2006).

*Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  The proposed amendment was futile, because it failed to add additional facts that would strengthen Wilson's claims.

### E. Wilson's Point Seven: "Court Did Not Consider or Address Potential City Law Claims"

Wilson's proposed Third Amended Complaint sought to add claims under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8–101.  The Court pointed out that, because "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII," *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) (citation omitted), any proposed NYSHRL claims would not survive a motion to dismiss for the same reasons the Title VII claims were insufficient.  Opinion 9–10.

The Court did not fail to consider or address Wilson's proposed NYCHRL claims.  It explained, however, that "as to *both* sets of proposed new state-law claims, with no federal claim remaining in the case, the Court would have no basis to exercise subject-matter jurisdiction over this case."  Opinion 10 (emphasis added).  Federal jurisdiction in this case rested solely on Wilson's Title VII claims—a federal cause of action.  Federal district courts have supplemental jurisdiction over state-law claims, which include both NYSHRL and NYCHRL claims, "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  However, such jurisdiction is discretionary, *see City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997), and a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Both the Second Circuit and the Supreme Court have held that, as a general rule, "when the federal

6

claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Although the exercise of supplemental jurisdiction is discretionary, the ordinary case "will point toward declining jurisdiction over the remaining state-law claims." *In re Merrill Lynch*, 154 F.3d at 61 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Were the Court to consider Wilson's proposed amended complaint and dismiss his federal claims, as it would be required to do, there would be no special circumstances favoring the Court's exercising its supplemental jurisdiction to consider Wilson's state-law claims—under either the NYSHRL or the NYCHRL. Wilson remains free, of course, to bring his NYCHRL claims in state court.

## CONCLUSION

For the foregoing reasons, Wilson's motion for the Court to alter or amend its judgment is denied. The Clerk of Court is directed to terminate the motion at docket number 31.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: April 8, 2013
New York, New York

_____
PAUL A. ENGELMAYER
United States District Judge